JAMES PEACOCK GIBB III, Plaintiff-Appellant, v. BETTY LOU TRIEZENBERG, f/k/a Betty Lou Gibb, Defendant-Appellee.

Fourth District   No. 4—89—0129

Opinion filed September 19, 1989.

Arnold F. Blockman, of Hatch, Blockman, McPheters, Fehrenbacher & Lyke, of Champaign, for appellant.

Arthur M. Lerner, of Lerner & Kirchner, of Champaign, for appellee.

JUSTICE GREEN delivered the opinion of the court:

Plaintiff James Peacock Gibb III appeals from an order of the circuit court of Champaign County entered February 2, 1989, in which it ordered plaintiff to pay certain college expenses of his son Randy James Gibb. On appeal, plaintiff contends the court erred in failing to

consider the following factors in determining his share of the contribution toward his son's educational expenses: (1) the relationship between him and his son; (2) his lack of consent to the college selected by his son; and (3) the availability of less expensive public schools. Plaintiff further claims the court's findings as to the latter two contentions and its judgment determining the amount of his obligations are against the manifest weight of the evidence. For the reasons stated in this opinion, we affirm the order of the trial court.

On January 25, 1988, defendant Betty Lou Triezenberg petitioned the court to fix the college expenses for the child of the parties and to modify the previously entered judgment of dissolution. The petition alleged Randy Gibb was then 18 years of age and wanted to attend Washington University in St. Louis, Missouri, in the fall of 1988. The petition further indicated that, subtracting the amount of the grant Randy was to receive, the additional costs of room, board, and tuition at that university would still be $10,328 per year. Further expenses for the son were estimated at $2,864 per year. The petition stated plaintiff had sufficient assets to pay the costs of the son's college education but had expressed an unwillingness to do so. Defendant requested the court to enter an order requiring plaintiff to pay $13,202 per year for Randy's college expenses.

We deem it appropriate to note at this point that, as will be more fully shown later, the petition was inaccurate in that Randy Gibb had started attending Washington University in the fall of 1987. Plaintiff raises no issue as to any variance between pleading and proof. The variance could have been corrected by amendment. Obviously, the experienced counsel involved did not consider the matter significant.

Plaintiff raised several "affirmative defenses" in response to defendant's petition. He claimed he and his son had no relationship, and he should have no obligation to pay for the college expenses of a son with whom he had had no contact. Second, he contended neither the son nor defendant consulted with him regarding the choice of college, and he was not given the opportunity to approve of his son's selection. Finally, he indicated Washington University, a school which plaintiff took no part in choosing, was an expensive private school, and his son could have easily been accepted to any public institution in Illinois. As a result, plaintiff claimed he should either have *no* obligation to pay for the schooling or, in the alternative, his obligation should be based upon the costs of attending a public institution. Defendant moved to strike those "affirmative defenses."

At the time set for hearing on defendant's petition but before hearing evidence, the court heard arguments and ruled on defendant's

motion to strike plaintiff's affirmative defenses. The court indicated the lack of consent and the selection of a private school were both *valid* items for the court to consider. Thus, it denied defendant's motion as to those defenses. However, it granted the motion as it pertained to the lack of relationship between the plaintiff and his son. At a subsequent point in the proceedings, the court stated it did not think the status of the relationship was relevant to the issues before it. It denied any offers of proof made by plaintiff's attorney relating to that defense.

The evidence at the hearing on defendant's petition held December 22, 1988, revealed the parties divorced in 1977. At that time, plaintiff worked for the Illinois State Water Survey at a salary of $20,000; defendant was employed as a teacher and made $5,000. Plaintiff described their standard of living at that time as "comfortable" or "modest." Defendant said Randy was then seven years old and had a good relationship with his father. She stated plaintiff indicated in 1977 he would take care of his son's educational expenses.

Plaintiff testified that, in the summer of 1985, he and Randy discussed possible schools he might attend. Plaintiff admitted he told Randy to look at Washington University, among others, because of the financial aid available there. He also suggested the University of Michigan as well as the University of Illinois. Randy corroborated this testimony and further stated his father had strongly recommended he not attend the University of Illinois since it was so close to home.

Starting in October 1986, plaintiff wrote several letters to defendant concerning Randy's college selection process. Plaintiff suggested his son obtain counselling on the subject and apply to State schools in addition to the competitive, expensive schools to which he had applied. He informed defendant he "expect[ed] to be an integral part of Randy's future plans."

In November 1986, both Randy and his mother wrote plaintiff and told him they had previewed Washington University and that Randy was very much interested in attending school there. They also told him he had been accepted at both University of Michigan and University of Illinois. Plaintiff stated this was the first time he learned of Randy's intention to attend Washington University.

Defendant conceded plaintiff had tried to get involved in the college selection process, but she did not obtain his consent before sending Randy to Washington University because she was Randy's legal guardian. She said Randy had chosen Washington University as the school he wished to attend, and plaintiff was not consulted about his choice.

Randy started at Washington University in the fall of 1987, majoring in international business. For the 1987-88 academic school year, he received a $5,400 grant plus additional loan money. Defendant testified the balance of the costs of Randy's college expenses for that school year, after deducting grant and loan money, totalled $6,203, plus $2,864 for other miscellaneous expenses. Defendant further testified that, due to a tuition increase for the 1988-89 school year, the actual cost of attending Washington University for that year would total a little over $10,000.

Randy worked at K mart 25 to 40 hours per week during the summer of 1988 and made $1,200. He was also enrolled in the work study program at the university and earned about $100 per month. Randy indicated he had good grades and worked 5 to 10 hours per week as a teaching assistant. He believed the school was well suited for his interests in international business.

Plaintiff testified he received an undergraduate degree in engineering from the University of Illinois and currently earned $77,000 annually. He also said he received a $4,000 bonus in 1988 and would probably receive a similar bonus in 1989. Finally, he stated he received 5% to 10% of his base pay in overtime in 1988. He indicated that, although his wife worked, she was also working on her Ph.D. and did not earn much money. He stated his expenses exceeded his income.

Defendant said she graduated from Illinois State University and was employed as a teacher, earning $25,000 per year. She also stated her current husband, a car salesman, made approximately $40,000 annually. She indicated Randy lived with her during the summer and other school vacations.

Following presentation of evidence and arguments of counsel, the court declined to reconsider its earlier ruling in refusing to consider the poor father-son relationship as an aspect of the case. In doing so, it stated it had "found no case where that [factor] was held to be the determining factor, [that,] if there [was] an estranged relationship between the parent and child, *** the parent's obligation to support the child, whether it be educational expenses or other, would terminate or no longer be there." Furthermore, it emphasized that, "clearly, the relationship between the parent and child can't be controlling as to whether or not there is an obligation on the part of the parent to pay for educational expenses." It noted section 513 of the Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1987, ch. 40, par. 513) required it to consider three relevant factors in making its decision, and the parent-child relationship was not one of them.

In reaching its decision, the court discussed Randy's employment and academic abilities and the fact that defendant was providing for some of his needs during the summer and school vacations. It also discussed Randy's selection of Washington University as the college to attend. The court emphasized plaintiff had first mentioned the college to Randy, and the son then explored that possibility. Also, the father had encouraged Randy not to attend the University of Illinois. The court found no vindictiveness in the choice of a private school over a public school.

The court further considered the present incomes of both parties and stated plaintiff clearly possessed the ability to pay for his son's college expenses. It also noted defendant was able to pay, and had contributed in the past, for her son's expenses. It refused to base its decision on the costs of attending the University of Illinois. It decided the selection of a private school here was "perfectly permissible," and Randy's selection of Washington University in particular was in his best interest. It indicated its decision could change, though, if the current expenses changed in the future.

After reviewing all factors, the court ordered plaintiff to pay retroactively the sum of $11,000 for the past educational expenses during the 1988 calendar year. It further ordered him to pay $1,000 a month starting in January 1989 and ending June 1991. The plaintiff was not required to pay the $1,000 sum in the month of July in any given year, however.

■ Section 513 of the Act provides in part as follows:

"The Court *** may make such provision for the education and maintenance of the child ***, whether of minor or majority age, out of the property and income of either or both of its parents as equity may require, whether application is made therefor before or after such child has *** attained majority age. In making such awards, the court *shall consider all relevant factors* which shall appear reasonable and necessary, *including*:

(a) The financial resources of both parents.

(b) The standard of living the child would have enjoyed had the marriage not been dissolved.

(c) The financial resources of the child." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 40, par. 513.)

Plaintiff now contends the court erred in failing to consider (1) the lack of a father-son relationship; (2) his lack of consent to the college selected by his son; and (3) the availability of less expensive public schools as relevant factors in making its decision. While he recognizes no law exists which mandates the court to consider these specific fac-

tors, he argues the court committed error when it wholly refused to consider them as relevant and focused only on those factors enumerated in section 513 quoted above.

■ We note initially the court only *expressly* refused to consider the evidence relating to the first factor, the absence of a relationship between plaintiff and his son. With regard to the two remaining factors, the court expressly stated they were "valid" factors for a court to consider. Comments made by the court regarding selection of the school revealed the court believed Randy himself had made the decision to attend Washington University, but plaintiff had played a bigger role in that decision than he had suggested. In addition, although the court stated it would not base its decision on the costs of attending the University of Illinois, a less expensive public institution, it indicated its decision may have been different under different circumstances. These comments suggest that, contrary to plaintiff's assertions, the court did, in fact, take the latter two factors into consideration in making its decision, and its findings with regard to those factors were not contrary to the manifest weight of the evidence.

■ With regard to the first factor relating to the absence of a father-son relationship, the court did describe evidence concerning that factor as "not relevant" to the issues before it. However, it also emphasized the lack of a relationship would not, of itself, terminate the parent's *obligation to pay* the expenses. This is consistent with present case law. (*Hight v. Hight* (1972), 5 Ill. App. 3d 991, 995, 284 N.E.2d 679, 682; *Imes v. Imes* (1977), 52 Ill. App. 3d 792, 367 N.E.2d 1075.) We recognize the court could, and perhaps should, have considered that factor in addition to the factors enumerated in section 513 of the Act (see *In re Marriage of Gardner* (1980), 85 Ill. App. 3d 1004, 407 N.E.2d 802), but we conclude that, under the circumstances, the court did not commit reversible error in refusing to consider it here.

■ Based on the evidence presented, the court correctly concluded plaintiff clearly possessed the ability to pay the expenses of his son's college education. The court also determined both defendant and Randy were contributing: defendant, by providing for her son's needs during breaks from college and, Randy, by working during the summer and at school. Moreover, the accrued expenses for which she was awarded $11,000 in reimbursement began to accrue in January 1988. Thus, she received no reimbursement for Randy's expenses for the first semester of the 1987-88 college year.

■ Plaintiff further maintains that, even if he was able to make the payments and defendant was doing her share, the determination

of the amount of payments he was to make was contrary to the manifest weight of the evidence because the amount he was requested to pay exceeded Randy's needs. The dispute in this regard apparently arises because Randy was able to secure loans in the total amount of $4,125 each of his first two years. Plaintiff maintains he should have no responsibility for repayment of those loans. He claims Randy should be expected to continue to borrow this sum of money, and plaintiff should have no responsibility for repayment of the loans. We disagree. The court was well within its discretion in ordering plaintiff to make payments for college expenses which would not require his son to go into substantial debt to procure a college education.

The sum of $1,000 per month 11 months of each year as a basis for (1) plaintiff's duty to reimburse defendant for 1988; and (2) the sum to be contributed by defendant in the future, was apparently determined after consideration of defendant's testimony and charts showing (a) an estimate of Randy's expenses for the 1987-88 year; and (b) a projection of his likely expenses for the 1988-89 year. These charts, giving figures for those school years, were not parallel to the calendar years for which payments were ordered. However, this should create no problem because payments required for the year 1991 end June 1991, which should coincide with Randy's college graduation.

According to defendant's estimate, Randy's actual expenses for the 1987-88 year for tuition, activity fees, and room and food were $15,728. This figure would appear to be very accurate, as few sums seemed to be disputed. In addition to these sums, defendant estimated Randy spent an additional sum of $2,864 for such items as "utilities," "clothing and laundry," "medical and dental," "recreational and personal," additional food, and "transportation." These estimates were less certain than the estimates for the larger items, but they appear to be reasonable and likely. Thus, defendant estimated Randy's total expenditures for the 1987-88 year were $18,592. Those total expenditures were partially offset by a grant of $5,400, leaving the sum of $13,192 representing net expenditures. If that net sum is further reduced by the $4,125 in loans which Randy received, the net estimate expenditure would be only $9,067, an amount less than the $11,000 reimbursement awarded to defendant for 1988 and less than the yearly rate of $11,000 at which plaintiff was required to contribute in the future.

Defendant's projections of Randy's expenses for the 1988-89 college year are, in many ways, similar to those for 1987-88. The sum of $16,690 was projected for tuition, room, and board. Defendant appar-

ently also expected her son to incur miscellaneous expenses similar to those incurred in 1987-88, and to receive an estimated grant of $5;100. If that were the case, Randy's needs for that year would be approximately $14,454 without benefit of projected loans and only $10,329 if loans were obtained.

Consistent with our determination that the court could properly require the father to make payments for college support in amounts sufficient to negate needs for loans, we hold the payments the court ordered the father to make were not shown to exceed Randy's needs.

We affirm the decision of the circuit court.

Affirmed.

McCULLOUGH, P.J., and SPITZ, J., concur.