*In re* MARRIAGE OF VICKY C. DRYSCH, n/k/a Vicky Rullo, Petitioner-Appellant, and MARK J. DRYSCH, Respondent-Appellee.

Second District    No. 2—99—1031

Opinion filed June 23, 2000.—Rehearing denied July 27, 2000.

Alfred S. Lee, Timothy B. Newitt, and Howard W. Broecker, all of Johnson, Westra, Broecker, Whittaker & Newitt, P.C., of Carol Stream, for appellant.

Mark J. Drysch, of Elmhurst, appellee *pro se*.

JUSTICE GEIGER delivered the opinion of the court:

The petitioner, Vicky Drysch, appeals from the May 25, 1999, order of the circuit court of Kane County requiring the respondent, Mark Drysch, to pay 10% of the educational expenses of the parties' son, Adam. On appeal, Vicky argues that, in determining this amount, the trial court improperly considered (1) the income of Vicky's current husband, Alex Rullo, and (2) the relationship between Mark and Adam. We reverse and remand for further proceedings.

The parties' marriage was dissolved on September 2, 1988. Pursuant to a marital settlement agreement entered into between the parties, the judgment of dissolution included a provision for the payment of future educational expenses for the parties' two children. This provision stated:

"12. Future Education Expenses: That the parties shall contribute to the future education expenses of the minor children based upon their respective financial abilities, considering the statutory standards when the children show the aptitude and desire to continue their education. If the parties cannot agree in this regard, [a] court of competent jurisdiction shall do so upon proper notice

and petition, taking into consideration Section 513 of Chapter 40 of the Illinois Revised Statutes [(Ill. Rev. Stat. 1987, ch. 40, par. 513 (now 750 ILCS 5/513 (West 1998)))]."

On July 22, 1998, Vicky filed a petition for modification of judgment. Vicky's petition requested, among other relief, that Mark be required to contribute to Adam's college expenses. The petition alleged that Adam had graduated from Marmion Academy in Aurora with a 3.75 grade point average and would be enrolling at Purdue University in the fall of 1998. The cost of attending Purdue University was approximately $20,000 per year, and Adam would not be receiving any scholarships in connection with his enrollment. The petition further alleged that, as Mark was earning in excess of $80,000 per year at his work, he was able to contribute to Adam's educational expenses.

On May 5, 1999, the trial court conducted a hearing on Vicky's petition. Both Mark and Vicky testified. Mark testified that he worked as a customer engineer for Hewlett Packard and earned a gross salary of $70,000. Mark testified that he also earned interest from various savings accounts, owned 1,500 shares of Hewlett Packard stock, and had $120,000 invested in his company's 401(k) plan. Mark testified that he filed a joint tax return with his current wife for 1998 with a reported gross income of $85,269.49. Mark testified that part of this gross income was attributable to his current wife.

Vicky testified that she was a realtor and worked for the "Rullo Team" in Geneva. The Rullo Team consisted of Vicky, her new husband Alex, and three other real estate professionals. Vicky testified that Alex paid her $50,000 a year as a salary for working on the Rullo Team. Vicky further testified that she and Alex would pool their money for meeting expenses.

Vicky additionally testified that the parties' son Adam had begun attending Purdue University the previous fall. Tuition and fees at Purdue were $8,431 per semester, with room and board costing an additional $2,191. Vicky testified that although Adam had applied for scholarships, he had not received any.

Vicky further testified that Adam and Mark had not seen each other in three to five years. Vicky testified that several years earlier there had been an altercation between Mark and Adam that resulted in an order of protection being filed against Mark. Vicky testified, however, that she had encouraged Adam to keep in contact with his father. Moreover, approximately one or two years earlier, Adam had changed his last name to that of her current husband.

At the close of the testimony, Mark sought to admit into evidence the joint income tax returns of Vicky and her husband Alex. This return indicated that Alex and Vicky reported a gross income of

$621,000 in 1998. Over Vicky's objection as to relevance, the trial court admitted this joint return into evidence. The trial court found that the return was relevant in light of Vicky's testimony regarding "the commingling of monies and the payment of expenses" with her husband Alex.

On May 25, 1999, the trial court entered an order requiring Mark to be responsible for 10% of Adam's college expenses. In entering its order, the trial court noted that the relevant factors to be considered pursuant to section 513 of the Illinois Marriage and Dissolution of Marriage Act (the Dissolution Act) (750 ILCS 5/513 (West 1998)) were (1) the financial resources of both parents; (2) the standard of living the child enjoyed during the marriage; and (3) the financial resources of the child. The trial court then specifically found that (1) Mark earned approximately $70,000 in 1998; (2) Mark and his new wife had a joint income of $92,000 in 1998; (3) Mark's standard of living had remained stable since the divorce in 1988; (4) Vicky earned an annual salary of $50,000 per year from her new husband, Alex; (5) Alex had a reported gross income in 1998 that exceeded $621,000; (6) Vicky enjoyed a higher standard of living now than when she was married to Mark; (7) Adam enjoyed a more affluent lifestyle now than when his parents were married; and (8) Vicky had more extensive financial resources than Mark. The trial court further found that, pursuant to *Gibb v. Triezenberg*, 188 Ill. App. 3d 695, 701 (1989), it was appropriate to consider the relationship between Mark and Adam. The trial court noted that Mark had not seen Adam in over five years. The trial court also noted that Adam changed his last name to that of Vicky's current husband. Following the denial of her motion to reconsider, Vicky filed this timely notice of appeal.

●1 Prior to considering the merits of this appeal, we note that Vicky has filed a motion requesting that we strike portions of Mark's brief. Vicky contends that Mark's statement of facts contains statements and argument not supported by the record in violation of Supreme Court Rule 341 (177 Ill. 2d Rs. 341(e)(6), (f)). We have reviewed Mark's brief and agree that it does not comply with Supreme Court Rule 341. We therefore grant Vicky's motion and strike those parts of Mark's statement of facts in his brief that contain argument and facts not supported by the record. See *Certified Mechanical Contractors, Inc. v. Wight & Co.*, 162 Ill. App. 3d 391, 396 (1987).

Vicky's first argument on appeal is that the trial court erred in considering her new husband's income in determining the amount Mark should pay towards Adam's college expenses. Vicky argues that the trial court impermissibly placed the burden of educating Adam on her new husband rather than Mark.

¶2 Our resolution of this issue is governed by section 513 of the Dissolution Act, which sets forth those factors that a trial court must consider when making an award for the educational expenses of a child. See 750 ILCS 5/513 (West 1998); *In re Marriage of Dieter*, 271 Ill. App. 3d 181, 190 (1995). Section 513 provides in pertinent part:

"(b) In making awards under paragraph (1) or (2) of subsection (a), the court shall consider all relevant factors that appear reasonable and necessary, including:

(1) The financial resources of both parents.

(2) The standard of living the child would have enjoyed had the marriage not been dissolved.

(3) The financial resources of the child." 750 ILCS 5/513(b) (West 1998).

We note that section 513 has been amended subsequently to add an additional factor for the trial court's consideration, that being the child's academic performance. See 750 ILCS 5/513(b)(4) (West Supp. 1999). However, that amendment is not applicable to the case at bar.

The primary question before us is whether Vicky's current husband's income constitutes part of her "financial resources" so as to be considered by the trial court pursuant to section 513. To resolve this issue, we must determine the meaning of the term "financial resources" for purposes of section 513(b)(1) of the Dissolution Act.

The principles governing statutory interpretation are well settled. The primary rule is that a court should determine and give effect to the legislature's intent. *Lucas v. Lakin*, 175 Ill. 2d 166, 171 (1997). This intent is best discerned from the words of the statute itself. *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 397 (1994). Where the statutory language is clear and unambiguous, a court must construe the statute as enacted without adding exceptions, conditions, or limitations to the legislature's clearly expressed intent. *Bethania Ass'n v. Jackson*, 262 Ill. App. 3d 773, 776-77 (1994). Additionally, a court must construe the statute so as to give each provision some reasonable meaning and to avoid finding surplusage, if possible. *Clay v. Kuhl*, 297 Ill. App. 3d 15, 20 (1998). On appeal, an issue of statutory construction is subject to *de novo* review. *Lucas*, 175 Ill. 2d at 171.

■ The plain language of section 513(b)(1) states that the trial court shall consider "the financial resources of both parents." 750 ILCS 5/513(b)(1) (West 1998). The term "resources" has been defined as "[m]oney or any property that can be converted to meet needs" as well as the "available means or capability of any kind." Black's Law Dictionary 1179 (5th ed. 1979). Based on the use of the word "resources," rather than a more narrow term, such as "income" or "salary," we believe that the legislature intended that the trial court

consider all the money or property to which a parent has access. This may include that parent's income, her property and investment holdings, as well as money or property that could be available to her through her new spouse.

We note that such an interpretation finds support in *Greiman v. Friedman*, 90 Ill. App. 3d 941, 949 (1980). In that case, the wife filed a postdecree petition requesting that the husband be required to continue paying the college expenses of their three adult daughters. *Greiman*, 90 Ill. App. 3d at 942. At the hearing on the petition, the husband sought to admit into evidence his expenses for raising his second family, and the trial court refused. *Greiman*, 90 Ill. App. 3d at 947-48. On appeal, the reviewing court reversed, holding that the trial court erred in precluding the husband's evidence of his liabilities because section 513 requires that the financial resources of both parents be considered. *Greiman*, 90 Ill. App. 3d at 948. The reviewing court additionally found that it was important for the trial court to hear further evidence on the parties' complete financial circumstances. *Greiman*, 90 Ill. App. 3d at 949. The reviewing court explained:

> "Realistically, it is likely that both parties pool their resources with those of their second spouses, so that their assets and liabilities are substantially intertwined. Allowing the parties to submit detailed information of their finances will permit the trial court to reach a more principled, and thus more equitable, determination of the share that each party should contribute." *Greiman*, 90 Ill. App. 3d at 949.

We believe that the principles annunciated in *Greiman* are equally applicable to the case at bar. At the hearing on her petition, Vicky testified she and her current husband pooled their income and money to pay their family expenses. As Vicky pooled her income and liabilities with those of her current husband, it was therefore necessary for the trial court to consider her current husband's income in order to attain a complete grasp of her financial resources. As in *Greiman*, we believe that it is more equitable that the trial court be presented with the complete financial circumstances of each party so that it may be able to reach a fairer and more just determination. See *Greiman*, 90 Ill. App. 3d at 949. To hold otherwise would defeat the plain language of section 513 by permitting Vicky to shield some of her financial resources from the trial court's consideration.

In support of her argument, Vicky notes that traditionally the financial status of the custodial parent's current spouse is not considered in proceedings to modify child support. See *Robin v. Robin*, 45 Ill. App. 3d 365, 371-72 (1977). This rule developed because the new spouse has no legal obligation for the support of his stepchildren.

See *In re Marriage of Omelson*, 112 Ill. App. 3d 725, 734 (1983). However, the law on this subject is evolving as several reviewing courts have found that equitable principles require the consideration of a new spouse's income. See *In re Marriage of Baptist*, 232 Ill. App. 3d 906, 920 (1992) (trial court properly considered the financial resources of the noncustodial father's new wife because her resources had been commingled with the noncustodial father's); *In re Marriage of Keown*, 225 Ill. App. 3d 808, 813 (1992) (the financial status of a current spouse may be equitably considered to determine whether the payment of child support would endanger the ability of the support-paying party and that party's current spouse to meet their needs). For the reasons discussed above, we agree with these courts that a trial court may equitably consider the income of a parent's current spouse in determining an appropriate award of child support. Accordingly, for all the foregoing reasons, we do not believe that the trial court erred in considering Vicky's current husband's income when making its award.

■ Vicky's second contention on appeal is that the trial court erred in considering Mark's estranged relationship with Adam as a factor in making its determination. Vicky argues that the nature of the child's relationship to the parent is not relevant in determining to what extent the parent should pay the child's educational expenses. We agree.

As noted above, under section 513, in determining whether to require a parent to pay for a child's educational expenses, the trial court is to consider "all relevant factors." 750 ILCS 5/513(b) (West 1998). In addition to those factors specifically enumerated in section 513, other relevant factors have been found to include the cost of the schooling, the programs offered at the school, the child's scholastic aptitude, how the school meets the child's goals, and the benefits the child will receive from attending the school. *In re Marriage of Spear*, 244 Ill. App. 3d 626, 630 (1993).

In *Gibb v. Triezenberg*, 188 Ill. App. 3d 695, 701 (1989), the Illinois Appellate Court, Fourth District, held that the lack of a parent-child relationship was also an appropriate factor to consider under section 513. In *Gibb*, the trial court did not consider the poor relationship between the father and the son in determining the extent that the father should contribute to the son's educational expenses. *Gibb*, 188 Ill. App. 3d at 700. The reviewing court held that the trial court "could, and perhaps should, have considered that factor." *Gibb*, 188 Ill. App. 3d at 701. However, the reviewing court found that this was not reversible error in light of the evidence presented that the father was able to pay for the son's expenses and that both the mother and the son were contributing to the educational expenses. *Gibb*, 188 Ill. App. 3d at 701.

However, the opposite conclusion was reached by this court in *In re Marriage of Sreenan*, 81 Ill. App. 3d 1025, 1029 (1980), where we held that a divorced parent's obligation to pay for his child's educational expenses is not dependent on that parent having a good relationship with his child. In *Sreenan*, the relationship between the noncustodial father and his children deteriorated after the husband remarried following his divorce from the children's mother. *Sreenan*, 81 Ill. App. 3d at 1027. Although the father initially paid for the educational expenses of two of his daughters, he refused to pay anymore after they changed their majors to one of which he did not approve. *Sreenan*, 81 Ill. App. 3d at 1027. The mother thereafter filed a petition seeking for the father to pay the daughters' educational expenses. *Sreenan*, 81 Ill. App. 3d at 1026. Following a hearing, the trial court ordered the father to pay 65% of the daughters' college expenses. *Sreenan*, 81 Ill. App. 3d at 1027. On appeal, this court rejected the father's argument that the trial court erred in requiring him to contribute toward his daughters' educational expenses. *Sreenan*, 81 Ill. App. 3d at 1029. We held that it was "well settled that this obligation to contribute to educational expenses is not conditioned upon a continued good relationship between parent and child or upon obtaining prior consent from the supporting parent." *Sreenan*, 81 Ill. App. 3d at 1029.

We believe that *Sreenan*, rather than *Gibb*, contains the correct statement of the law in this area. We do not believe that, in making an award for educational expenses, it is appropriate for the trial court to consider a poor relationship between a parent and child. If the trial court were to consider a poor relationship as a factor, the trial court could potentially find that the parent was not required to contribute toward the education of the child due to the existence of that poor relationship. This is clearly contrary to the intended purpose of section 513. See *In re Marriage of Dieter*, 271 Ill. App. 3d 181, 190 (1995) (purpose of section 513 in authorizing discretionary award for child's educational expenses is to guarantee that funds are available if the need arises).

Moreover, we believe that consideration of this factor is inappropriate in light of the realistic considerations of the devastating effect that divorce often has on relationships between parents and their children. In *Kujawinski v. Kujawinski*, 71 Ill. 2d 563, 579-80 (1978), our supreme court discussed this situation. The court stated:

"It cannot be overemphasized that a divorce, by its nature, has a major economic and personal impact on the lives of those involved. That the legislature is cognizant of this is evident by the fact that an express purpose of the [Dissolution] Act is to 'mitigate the

potential harm to the spouses and their children caused by the process of legal dissolution of marriage.' (Ill. Rev. Stat. 1977, ch. 40, par. 102(4) [(now 750 ILCS 5/102(4) (West 1998))].) Commonly, a divorce means that the spouses will go their separate ways, live independent lives, and accrue additional expenses which they would not have had had the family remained united. Unfortunately, it is not the isolated exception that noncustodial divorced parents, because of such additional expenses or because of a loss of concern for children who are no longer in their immediate care and custody, or out of animosity directed at the custodial spouse, cannot be relied upon to voluntarily support the children of the earlier marriage to the extent they would have had they not divorced. One appellate court stated in ordering a divorced parent to contribute to the college education of his noncustodial child:

'In a normal household, parents *** direct their children as to when and how they should work or study. That is on the assumption of a normal family relationship, where parental love and moral obligation dictate what is best for the children. Under such circumstances, natural pride in the attainments of a child *** would demand of parents provision for a college education, even at a sacrifice.

When we turn to divorced parents—a disrupted family—society cannot count on normal protection for the child, and it is here that equity takes control to mitigate the hardship that may befall children of divorced parents.' *Maitzen v. Maitzen* (1959), 24 Ill. App. 2d 32, 38." *Kujawinski v. Kujawinski*, 71 Ill. 2d at 579-80.

As noted in *Kujawinski*, we believe that a common consequence of divorce is that a noncustodial parent may grow apart from his or her children. Divorce may also result in acrimony between the children and noncustodial parent. However, a poor relationship does not eliminate the parent and child bond or the parent's continuing duty to provide for his children. See *Sreenan*, 81 Ill. App. 3d at 1029. Nor do we believe that a child should be penalized for the mere existence of such a poor relationship between himself and a parent following the divorce. Therefore, for these reasons, we believe that the nature of the relationship between the noncustodial parent and child is not a factor for the trial court to consider in determining the appropriate amount for the noncustodial parent to pay in educational expenses.

Accordingly, we believe that the trial court erred in considering Mark's poor relationship with Adam in entering its order. As we cannot ascertain from the record how much weight the trial court placed on this improper factor, we reverse its May 25, 1999, order and remand for further proceedings not inconsistent with the opinions expressed herein.

For the foregoing reasons, the judgment of the circuit court of Kane County is reversed, and the cause is remanded for additional proceedings.

Reversed and remanded.

COLWELL and RAPP, JJ., concur.