3-00-0904

No. 3-00-0904

______________________________________________________________________________

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2001

 ) 

LINDA A. STREET ) Appeal from the Circuit Court

Petitioner-Appellee, ) for the 10th  Judicial Circuit,

) Tazewell County, Illinois

) 

)

) No. 91 D 456

) 

 ) Honorable Rebecca Steenrod

DANIEL L. STREET ) Judge, Presiding 

Respondent-Appellant )

)

______________________________________________________________________________

JUSTICE McDADE, delivered the Opinion of the court

______________________________________________________________________________

On March 15, 2000, Linda Street, n/k/a Linda Ross (Linda), filed a petition for college educational expenses, asking the court to require Daniel Street (Daniel), her ex-husband, to pay 75% of the cost of sending their son, Austin Street (Austin), to Bradley University.  She also asked the court to order Daniel to pay $300.00 per month toward Austin's room, board, dues, transportation, books, fees, etc. while Austin resided with her and attended Bradley.  At the hearing on June 14, 2000, the trial court refused to consider the income of Linda's current husband, Carl Ross.  On July 7, 2000, the court entered an order requiring Daniel Street to pay 75% of the remaining $12,100 toward Austin's college education, and $235 toward Austin’s additional expenses.  Daniel appeals from the trial court's refusal to consider Carl Ross' income, and from the order requiring him to pay $9,000 towards Austin's Bradley education.  We affirm in part, reverse and vacate in part, and remand.

FACTS

Linda and Daniel were divorced on March 9, 1992.  At that time, they had two minor children.  The dissolution judgment incorporated a marital settlement agreement which gave Linda custody of the minor children, subject to Daniel's visitation rights.  In addition, the post majority college expense was "specifically reserved."  From the time of their divorce in March 1992 until Thanksgiving 1996, Daniel regularly exercised his visitation rights, apparently with some difficulty.  

Around Thanksgiving 1996, Daniel's children refused to accompany him to a Thanksgiving dinner at the time previously specified by the court.  On December 1, 1996, Daniel wrote his children a letter, explaining to them that he would no longer attempt to exercise specific visitation.  Rather, he asked them to contact him when visitation was convenient for them.  Between December 1, 1996, and June 2000 Daniel only heard from Austin twice.  However, Daniel continued to send Austin cards on his birthday and Christmas, without any response.  

On March 15, 2000, Linda filed a petition for college educational expenses, stating that Austin had been accepted to Bradley University (Bradley) for enrollment in the fall semester.  The petition also set forth that Austin had an aptitude in math and science, and that he was planning to pursue a mechanical engineering degree at Bradley. 

According to Linda's financial affidavit, she was employed as an office manager with a net monthly income of $1,746, she received $860.00 per month in child support, and she had total living expenses of $4,876.66 per month.  Her affidavit did not disclose any mortgage or rent obligation, ownership of an American Mutual fund, a New Economy fund, income from interests in a farm trust and a family partnership, or any real estate tax obligations.  

Daniel's financial affidavit reflected that he worked at Caterpillar as an electrician, earning a net monthly income of $2,164.63 (after paying $909.30 in child support).  He had total living expenses of $2,840.28 per month, along with assets totaling $156,535.52 in value and debt totaling $34,911.35.  His paycheck stub indicated that he earned $23.18 per hour, and averaged 6.14 hours per week in overtime.  However, according to Daniel's tax return and W-2, he earned $80,843.93 in 1999.  

During the discovery process, Linda refused to produce anything regarding the income or assets of her current husband, Carl Ross.  At the hearing on the petition on June 14, 2000, however, Linda did testify that she and Carl Ross had been married in November 1999, and they had been living together in a newly constructed, jointly-owned home for a little over a year at the time of the hearing.  Linda testified that the home was valued at approximately $420,000, and they had a mortgage of approximately $370,000.  Linda also testified that she had a checking and savings account held in joint tenancy with Carl, as well as a mutual fund worth about $25,000.  

At the hearing both Linda and Daniel testified in detail regarding their financial status.  Linda was extensively cross-examined with regard to the items not disclosed on her financial affidavit.  In addition, the court did allow some cross-examination with regard to assets held jointly by Linda and Carl.  However, the court refused to allow any inquiry into assets or income held solely by Carl.  

During the hearing, Linda produced the projected annual expenses for Austin to attend Bradley as a commuter student in 2000-2001.  The estimated tuition was $14,600, which would be reduced by a $2500 scholarship.  An additional $2,000 would be needed for books and supplies, clothing, laundry, recreation, transportation and other personal expenses.  Because Austin planned to live at home, costs for room and board were not included in the projection.  Linda submitted her own estimate for Austin's expenses, including his share of the family utilities and meals totaling approximately $225 per month, and his activities totaling approximately $250.00 per month.  

Daniel introduced evidence with regard to the estimated cost to attend the University of Illinois on a full-time resident basis for an engineering student, which totaled $12,180 per year.  Daniel also introduced evidence that Austin could attend Illinois Central College for approximately $1,600 per year plus room and board, or Eastern Illinois University (another college to which Austin had been accepted) for between $7,000 and $8,000 per year for tuition, room, and board.  Daniel testified that he believed a state school would meet his son's educational needs, and that he would have encouraged Austin to attend a state school had the parties remained married.  

Austin's certified high school transcript was also introduced into evidence.  According to the transcript, Austin graduated 131st out of 247 students and his grades in math and science were a cumulative C+ average.  He, however, had scored in the 81st percentile on the PSAT.  

On July 7, 2000, the trial court entered an order requiring Daniel to pay $9,000 towards the 2000-2001 tuition for Austin to attend Bradley University.  In addition, the court required Daniel to contribute $235.00 per month for Austin's living expenses while he resided with his mother.  The court made these payments contingent upon Austin remaining a full time student in good status and residing with Linda on a full time basis.  

Daniel had filed a motion for rehearing on August 4, 2000, which was denied on October 26, 2000.  Daniel filed his timely notice of appeal on November 22, 2000.  

ANALYSIS

Daniel raises two issues on appeal: (1) whether the trial court erred in refusing to permit discovery or inquiry into all financial resources available to Linda Ross, including the assets and income of Carl Ross, and  (2) whether the trial court erred in ordering Daniel to pay 75% of the cost of private school tuition.  

A. Relevance of Carl Ross' Income and Assets

Daniel argues that the trial court erred by refusing to allow him to investigate or inquire into the assets and income of Carl Ross.  In support of this argument, Daniel cites the statutory factors to be considered by the court in deciding whether or not to grant post majority support. 

The relevant statute is found in Section 513 of the Marriage & Dissolution of Marriage Act (Act), 750 ILCS 5/513 (West 1993), which provides: 

"(b) In making awards*** [for educational expenses] pursuant to a petition or motion to decrease, modify or terminate any such award, the court shall consider all relevant factors that appear reasonable and necessary, including: 

(1) the financial resources of both parents, 

(2) the standard of living the child would have enjoyed had the marriage not been dissolved, 

(3) the financial resources of the child, 

(4) the child's academic performance."

Based on these relevant factors, Daniel argues that the financial resources of both parents include the financial resources of a parent's current spouse.  In support of this argument, Daniel cites 
In Re Marriage of Drysch
, 314 Ill. App. 3d 640, 732 N.E.2d 125 (2000).  In the 
Drysch
 case, the court held that a trial court may equitably consider the income of a parent's current spouse in determining an appropriate award of child support.  The court based this decision on the fact that both parties realistically pool their resources with those of their second spouses, resulting in their assets and liabilities being substantially intertwined.  The court also noted that by using the term "resources", rather than a more narrow term such as income or salary, the legislature intended the trial court to consider all the money or property to which a parent has access.  
Drysch
, 314 Ill. App. 3d at 644-45, 732 N.E.2d at 129.

Linda argues that although the 
Drysch
 decision does provide some support for the argument that a trial court 
can
 consider the current spouse's income as part of the financial resources for purposes of determining the amount each party should pay toward a child's education, it does not create a mandate that the court do so.  In addition, Linda points to the long line of cases which have traditionally held that the financial status of the custodial parent's current spouse is not considered in a proceeding to modify support because the new spouse has no legal obligation for the support of his or her step children.  See, 
e.g.
,  
Robbin v. Robbin
, 45 Ill.  App. 3d 365, 371-72, 359 N.E.2d 809 (1977). 

Whether or not the trial court erred in refusing to allow investigation into Carl Ross' income is an evidentiary issue which is governed by an abuse of discretion standard of review.  
In Re Marriage of McHenry
, 92 Ill. App. 3d 634, 683 N.E.2d 670 (1997).  A trial court is considered to have abused its discretion when it makes a decision based upon an incomplete or inadequate record.  
In Re Marriage of Weiss
, 129 Ill. App. 3d 166, 472 N.E.2d 128 (1984).  

In reviewing the case law on this issue, there are no Illinois cases other than 
Drysch
 which have dealt directly with the issue at hand.  However, as previously indicated, the traditional rule had been that the financial assets of the current spouse are not relevant in making a support determination.  Given the traditional rule and the lack of controlling case law to the contrary, it is difficult to say that the trial court really abused its discretion in refusing to allow inquiry into Carl's assets in this case.  However, there is clearly a current trend in the case law moving away from the traditional rule of law on this issue.

The current trend began with 
In re Support of Whitney
, 90 Ill. App. 3d 734, 413 N.E.2d 872 (1980), 
 followed by 
Greiman v. Friedman
, 90 Ill. App. 3d 941, 414 N.E.2d 77 (1980), which found that the trial court abused its discretion in not allowing testimony about the father's financial obligations to his second family.  These cases have been followed by several others which have authorized a review of the noncustodial parent's current spouse's income.  
See e.g.
, 
In re Marriage of Garelick
, 168 Ill. App. 3d 321, 522 N.E.2d 738 (1988), 
In re Marriage of Keown
, 225 Ill. App. 3d 808, 587 N.E.2d 644 (1992), and 
In re Marriage of Riegel
, 242 Ill. App. 3d 496, 611 N.E.2d 21 (1993).  In fact, this court found that the payor's monthly expenses are to be shared to the extent that the new spouse contributed to their living expenses in 
Thurston v. Thurston
, 260 Ill. App. 3d 731, 633 N.E.2d 118 (1994).

Although each of these cases dealt with the current spouse of the payor, the same underlying principle should apply to the current spouse of the payee.  To the extent that the current spouse of the payee has income or assets which are or can be used to contribute to the living expenses of the payee, his or her income and assets should be considered by the court in making its determination regarding the amount the payee is able to contribute to the child's education.  Certainly, we are not saying that the new spouse of a parent is obligated to pay for the child's education, but only that to the extent the new spouse contributes to the expenses which would otherwise be paid by the parent, the new spouse's income and assets are relevant.

Given this analysis and the current trend of the law on this issue, we believe that the better rule of law is to follow the 
Drysch
 decision.  Therefore, we find in the present case that failing to consider Carl's income and assets to the extent they are or can be used to contribute to Linda's expenses constitutes an abuse of discretion.  We reverse the trial court's ruling on this issue and remand this case for further discovery regarding Carl's income and assets, and for further hearings regarding Linda's ability to contribute to Austin's college expenses.

Appropriateness of Court Order for Private School Tuition

Daniel argues that the trial court committed error by ordering him to pay 75% of the cost of tuition at Bradley, after reducing the tuition cost by the $2,500 scholarship Austin had received.   Bradley is a private university.  Daniel bases his argument on five factors: (1) the asserted preference for public schools in Illinois, (2) the financial resources of both parties, (3) the standard of living Austin would have had if the parties had remained married, (4) Austin's academic performance, and (5) the fact that he and Austin have had an estranged relationship since Thanksgiving, 1996.

Whether the trial court erred in requiring Daniel to pay 75% of the remaining cost for Austin to attend Bradley relates to an award of educational expenses in a dissolution proceeding.  This question is governed by an abuse of discretion standard of review.  
In Re Marriage of Thurmond
, 306 Ill. App. 3d 828, 715 N.E.2d 814 (l999). 

First, Daniel argues that there is a preference for public schools in Illinois.  In support of this position, he cites 
Plaster v. Plaster
, 47 Ill. 290 (1868), in which the Illinois Supreme Court found that no allowance should be made for the expense of tuition if a free school is reasonably available.  Over the years, the Illinois Supreme Court has reiterated its preference for tying a parent's obligation for post majority education to the cost of public school tuition.  
In Re Support of Pearson
, 111 Ill. 2d 545, 490 N.E.2d 1274 (1986).  

However, the Illinois courts are generally less concerned with the type of school than with the overall cost of attendance.  In making the determination with regard to whether or not the cost of school tuition is reasonable, the court will consider the parents' ability to pay for their child's college expenses.  
Gibb v. Triezenberg
, 188 Ill. App. 3d 695, 544 N.E.2d 444 (1989).  

 In this case, the trial judge specifically found that the commuter cost for Bradley was reasonable.  Based on the information presented at the trial, and the fact that no evidence was produced which indicated that the cost was unreasonable or out of line for similar colleges, it does not appear as though that finding was an abuse of discretion by the trial court.

Second, Daniel argued that the court erred in its analysis of the parties' disparate incomes.  In analyzing the income between Daniel and Linda, it is clear that Daniel earns a greater salary than Linda at his job.  In addition, based on Daniel's financial affidavit, it is apparent that he does have the ability to assist in Austin's education.  Although Daniel does not make three times what Linda makes, the trial court could consider both the income and the property of Daniel in determining whether he was financially able to contribute $9,000 towards Austin's education.  
Larson v. Larson
, 126 Ill. App. 3d 1072, 468 N.E.2d 165 (1984).  In comparing the assets owned by Daniel to those solely owned by Linda, it is clear that Daniel's are greater.  Although the trial court should consider the income and assets of Carl Ross, they can only be considered to the extent that they assist Linda in paying her monthly expenses and free up some of her income for assisting Austin.  They should not be considered in making the determination regarding Daniel's ability to assist Austin in paying for his education based on Daniel's income and assets.  Therefore, we cannot say that the court's determination was an abuse of discretion.  

Third, Daniel argued that had he and Linda remained married, he would have encouraged Austin to attend public school.  However, there was some evidence produced at trial that Daniel had expressed the hope that one or both of his children would attend a private fundamentalist school.  In addition, according to the record, the court made the determination that the parties could afford to assist Austin in attending Bradley, and that its cost was reasonable.  As previously indicated, based on a review of the record, this court cannot say those findings amounted to an abuse of discretion.

Fourth, Daniel argued, based on Austin’s past educational performance, that he would be better off in a smaller institution for the first two years, with the possibility to transfer to the University of Illinois.  Clearly, the court did consider Austin’s academic transcripts and the fact that he had been accepted to Bradley on scholarship.  In addition, although the record is silent as to the SAT or ACT, Austin scored well on his PSAT.  Based on those facts, we cannot say that the trial court abused its discretion in approving tuition for Bradley.

Finally, Daniel argued that his responsibility should be reduced given his estranged relationship with his son.  However, the estrangement is due to Daniel’s own actions, specifically his December 1996 letter. Courts do not look favorably on this type of argument, especially when the estrangement is due to some action of the parent.  
See
 
In re Marriage of Sreenan
, 81 Ill. App. 3d 1025, 402 N.E.2d 348 (1980), (finding that the obligation of a parent to contribute to educational expenses is not conditioned upon a continued good relationship between the parent and child).  We cannot find that the court's refusal to reduce Daniel's contribution to Austin's education was an abuse of discretion based on this argument.

Based on the foregoing, it does appear that the trial court's decision ordering Daniel to assist with Austin's education at a private university was reasonable and was not an abuse of discretion.  This is particularly true considering the fact that the trial judge made the continuation of this support contingent upon Austin remaining a student in good standing and continuing to live at home.  

C.  Appropriateness of Additional Support for Austin

The trial court ordered Daniel to pay $235 per month in child support for Austin, allegedly to help offset his monthly expenses for living at home.  Although neither party officially raised this as a separate issue, both parties briefed the arguments regarding the appropriateness of that portion of the order, and we find it necessary to address.

Section 513 of the Act authorizes the trial court to make provisions for maintenance as well as the educational needs of a child.  In addition,  "educational expenses entitle a mother to receive reasonable living expenses in addition to the cost of tuition and books when the children are residing at home while attending college."  
Marriage of Falat
, 201 Ill. App. 3d 320, 327, 559 N.E.2d 33, 37-38 (1990).  

In this case, the trial court ordered Daniel to pay $235 per month toward Austin's "reasonable living expenses."  This was approximately 50% of Austin's estimated monthly expenses, as calculated and testified to by Linda.  The estimate was reached, according to the record, by dividing the family's monthly expenses (including food and utilities, but not the mortgage) by five, because there were five persons living in the house.  To that figure, Linda added approximately $225 per month for Austin's special events (including band, Boy Scouts and CYO), reaching a total of $478.73.

Although some order for reasonable living expenses is certainly authorized by the act and the case law, the expenses must be based on the child's financial resources, the financial resources of both parents, and the standard of living the child would have enjoyed but for the dissolution of marriage.  
Falat
, 201 Ill. App. at 326, 559 N.E.2d at 37.  Based on the evidence presented in this case, Austin's standard of living has increased since the dissolution since Linda's marriage to Carl.  The house he currently resides in is newer and larger, so logic would dictate that it may be more expensive to maintain.  By basing Austin's reasonable expenses on one-fifth of the family expenses, Daniel is being forced to pay for Austin's increased standard of living.  In addition, no evidence was presented to show that Austin would be able to continue to play in the band at Bradley, or that he would have any costs associated with a continued relationship with Boy Scouts and CYO.  

In the absence of additional information, we believe that the trial court did abuse its discretion in ordering Daniel to pay $235 toward Austin's living expenses.  Thus, we remand this case to the trial court for further proceedings on that issue.

CONCLUSION

Based on the foregoing, the trial court's refusal to consider Carl Ross' income and assets, and its order requiring Daniel to pay $9000 toward Austin's education is affirmed as to the propriety of Bradley as the source of his education but
 reversed as to the amount, and the issue is remanded to the trial court for further handling in accordance with this opinion.  The order requiring Daniel to pay $235.00 for Austin's room and board, contingent upon Austin remaining a student in good standing and living at home is vacated, and the case remanded to the trial court for further proceedings on that issue.

Affirmed in part, reversed and vacated in part, and remanded.

LYTTON and HOLDRIDGE, J.J., concur.