2026 IL App (2d) 250138-U
No. 2-25-0138
Order filed January 9, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| MIGUEL A. CASTANEDA-FLORES, | ) | Appeal from the Circuit Court |
| | ) | of McHenry County. |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 11-FA-333 |
| | ) | |
| JESSICA SCHREIBER, | ) | |
| | ) | |
| Respondent-Appellee | ) | Honorable |
| | ) | Robert J. Zalud, |
| (Megan Castaneda, Contemnor-Appellant). | ) | Judge, Presiding. |

JUSTICE MULLEN delivered the judgment of the court.
Presiding Justice Kennedy and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:  In child support modification proceeding, the trial court did not err in refusing to quash child support recipient's subpoena for the bank records of the payor's current spouse, as the payor's access to the spouse's financial resources would impact his ability to pay child support. However, we vacate the finding of indirect civil contempt entered against the spouse for failing to comply with the subpoena.

¶ 2    Contemnor, Megan Castaneda, appeals from two orders of the circuit court of McHenry County. The first order (1) denied Megan's motion to quash a subpoena issued by respondent, Jessica Schreiber, in child support proceedings between Jessica and petitioner, Miguel A. Castaneda-Flores (Megan's husband), and (2) ordered Megan to comply with the subpoena. The

second order found Megan in indirect civil contempt of court for thereafter refusing to comply as ordered. Megan contends that the court abused its discretion in denying her motion to quash, because (according to Megan) her bank records—which the subpoena demanded—are not relevant to the child support proceedings. Megan asks that we (1) reverse the court's denial of her motion to quash and (2) vacate the court's finding of indirect civil contempt. We hold that the trial court did not abuse its discretion in finding that the bank records were relevant to the child support proceedings. Accordingly, we affirm the court's order denying Megan's motion to quash the subpoena and ordering her to comply therewith. We also hold that the court did not abuse its discretion in finding Megan in indirect civil contempt. Nevertheless, we vacate the order of contempt because Megan's refusal to comply with the subpoena was a good-faith means of pursuing an interlocutory appeal of the discovery issue.

¶ 3                                    I. BACKGROUND

¶ 4     Jessica and Miguel have a child together. Miguel pays Jessica child support under the terms of a 2012 "Judgment of Parentage and Parenting Agreement," which has since been modified several times. The most recent modification occurred on May 19, 2021. Under an agreed order entered on that date, Miguel was ordered to pay Jessica $602 per month in child support.

¶ 5     On March 8, 2024, Jessica filed a motion to modify child support under section 510 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/510(a)(1) (West 2022)), based on a substantial change in circumstances. Jessica alleged that, since May 19, 2021, (1) Miguel's income had substantially increased, (2) Jessica's income had increased, and (3) the needs of their minor child had increased. According to Jessica, it was "in the best interest of the minor child that each party's obligation for support be determined pursuant to the relevant

guidelines of the *** Act." She asked that any modification be made retroactive to the date of service of the motion.

¶ 6 On April 3, 2024, Miguel filed his response to the motion. Miguel admitted that the parties' incomes had changed and that the needs of their child had changed, but he denied that the "changes [were] substantial changes in circumstances."

¶ 7 On January 10, 2025, Jessica served Megan with a subpoena, requesting the following:

"1. True and complete copies of all federal and state personal income tax returns filed by you individually or jointly with some other person(s) for tax years 2022 and 2023, including W-2 Forms, 1099 Forms, K-1 statements, schedules and all other documents used in the preparation of the aforesaid tax returns.

2. All monthly bank statements and accompanying canceled checks, check registers, deposit slips, debit and credit memos, withdrawal slips or memoranda for any and all accounts with any banks or other institutions holding money or assets, foreign or domestic, whether in the nature of checking, savings or money market funds, wholly or partly in your name or over which you have right of withdrawal or check-signing power since May 20, 2021 (regardless of whether or not the account or accounts have been closed).

3. Copies of all documents demonstrating or relating to all payments made by you to, on behalf of, or for the benefit of, Miguel ***, since May 20, 2021, including but not limited to, bills, invoices, receipts, or account statements.

4. Copies of all documents demonstrating or relating to all payments made to you by Miguel *** since May 20, 2021, including but not limited to, bills, invoices, receipts, or account statements.

5. Copies of all documents relating to the employment of any child care service or provider used, hired, or employed by you, since May 20, 2021, including but not limited to, contracts, invoices, payments, statements, or compensation.

6. All documents referring to the ownership of all residential, commercial and industrial real estate, including deeds, title reports, title insurance policies, closing statements, real estate sales contracts, real estate tax bills, surveys, mortgages, mortgage amortization schedules, statements from any mortgagee indicating the outstanding loan balance, leases, operating statements showing income and expenses, appraisals or market studies and other writings relating to the title, value and liens or encumbrances affecting any real estate in which you have any ownership interest, legal, beneficial or equitable, with any other person or entity."

¶ 8    On January 21, 2025, Megan filed a motion to quash the subpoena under section 2-1101 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1101 (West 2022)). Megan argued that none of the information sought was relevant to Jessica's motion to modify child support. She also argued that the request was overly broad because the motion was filed on March 8, 2024, yet the subpoena sought information from May 20, 2021, forward. Megan stated that she provided Jessica with the only relevant information sought, *i.e.*, Miguel and Megan's joint tax returns. Megan asserted that the subpoena was issued to harass her and should be quashed.

¶ 9    In response, Jessica argued that the subpoena was not overly broad and that Megan's financial documents dating back to May 20, 2021, were relevant because (1) Miguel had indicated an intent to seek application of the multi-family discount, claiming that he paid "significant sums" for other children; and (2) the parties had discussed the possibility of using a "three-year income averaging approach" to calculate child support. Citing *In re Marriage of Rushing*, 2018 IL App

(5th) 170146, ¶ 38, Jessica argued that the separate income of a spouse can be relevant in determining a parent's child support obligation to the extent that the spouse's income "frees up" (*id.*) the parent's income and so permits the parent to pay more toward the support of the child.

¶ 10    A hearing took place on February 2, 2025. Megan first advised the trial court that she had provided the joint tax returns requested and would provide the parties' nanny contract. Megan otherwise contended that the subpoena should be quashed because the remaining information sought was irrelevant and the requests overreaching. Megan asserted that Miguel had provided his bank statements and filed several financial affidavits. According to Megan, her finances were "separate" from Miguel's finances except for monthly payments he made to Megan via Zelle "for various expenses that they share." She argued further that her real estate was irrelevant to a determination of Miguel's income.

¶ 11    Jessica argued that all the information sought was relevant to a determination of Miguel's income. According to Jessica, the determination of Miguel's income was not limited to what Miguel disclosed on his financial affidavits. Jessica asserted that if Megan paid expenses on Miguel's behalf, it would free up money for Miguel to pay as child support. Jessica argued further that, because Miguel suggested an income averaging approach, the request for documents going back three years was not overly broad, as the documents were relevant in determining Miguel's average income. According to Jessica, Miguel's income "was like 60 to 80, 100, then back down to 80."

¶ 12    The trial court denied the motion to quash. The court stated:

>    "I believe it—I believe it could be relevant. Based upon when the modification is, based upon the arguments in terms of income from [Miguel], I do find that it was not overly broad and burdensome.

Based upon the party's, third party's relationship with [Miguel], it can go to what the argument is. It can go to the income. It can go to arguments pertaining to whether or not the deviation would be warranted. It is all things that I believe ultimately will go to weight. What weight I give it I believe is what the cases really speak to, not whether or not the [c]ourt shall deny the discovery request. As a result, the motion to quash subpoena is denied."

¶ 13   After the trial court announced its ruling, Megan asked the court to limit some of the discovery requests. On February 7, 2025, the court issued an order requiring Megan to comply with the subpoena as modified. First, Jessica had voluntarily agreed to narrow the request in paragraph two by "remov[ing] the request for canceled checks (provided they are part of the bank records), check registers, deposit slips, debit and credit memos, withdrawal slips[,] or memoranda." Second, the court narrowed the request in paragraph six "to require the production of documents referring to ownership in real property held jointly with [Miguel] only." The court ordered Megan to comply fully with the subpoena as modified by February 25, 2025.

¶ 14   On March 4, 2025, the parties appeared for discovery status. Megan advised the trial court that, although she did provide "a handful of documents," she did not intend to comply with most of the requests. Jessica asked the court to (1) issue a rule to show cause and (2) find Megan in indirect civil contempt for failure to comply. Thereafter, the court entered an order finding Megan in indirect civil contempt for failing to comply with the court's order of February 7, 2025, and the subpoena. The court sentenced Megan to an indeterminate term in the McHenry County Jail, not to exceed six months. The court found that Megan could purge the contempt order by complying with the discovery order. The court stayed the sentence pending appeal.

¶ 15    On April 2, 2025, Megan filed a notice of appeal from (1) the February 7, 2025, order denying her motion to quash the subpoena and ordering her to comply therewith and (2) the March 5, 2025, order finding her in indirect civil contempt of court for failing to comply.

¶ 16                                    II. ANALYSIS

¶ 17    Megan contends that the trial court abused its discretion in denying her motion to quash the subpoena. Megan specifically challenges the subpoena's demand for her "bank records and income information" (her description). According to Megan, her bank records are not relevant to (1) "the application of the multi-family adjustment" or (2) "calculating Miguel's child support obligation." Megan contends further that requiring her to turn over her bank records violates her constitutional right to privacy. Megan asks that we reverse the court's denial of her motion to quash and vacate the court's order finding her in indirect civil contempt.

¶ 18    In response, Jessica first contends that we lack jurisdiction. According to Jessica, an order granting or denying a motion to quash a subpoena is not a final and appealable order. She argues further that, even if the order denying the motion to quash was final, Megan's notice of appeal was untimely because it was filed more than 30 days after that order. On the merits, Jessica contends that the trial court did not abuse its discretion in denying the motion to quash because the requested materials were relevant for properly determining Miguel's child support obligation. Thus, according to Jessica, the court did not abuse its discretion in finding Megan in indirect civil contempt.

¶ 19    We first consider our jurisdiction. Contrary to Jessica's argument, we have jurisdiction over this appeal. To be sure, discovery orders are not ordinarily appealable. *Burdess v. Cottrell, Inc.*, 2020 IL App (5th) 190279, ¶ 41; see *In re Marriage of Reicher*, 2021 IL App (2d) 200454, ¶ 26 (finding no jurisdiction to review the trial court's order quashing a party's subpoenas).

However, if the trial court imposes a contempt sanction on an individual for violating a discovery order, the contempt finding is final and appealable, and it presents to the reviewing court the propriety of the discovery order. *Burdess*, 2020 IL App (5th) 190279, ¶ 41. If the court's discovery order is invalid, the contempt judgment for failure to comply with it must be reversed. *Id.* Here, Megan timely appealed from the court's March 3, 2025, order, which found her in indirect civil contempt for failing to comply with its February 7, 2025, order, which denied her motion to quash and ordered her to comply with the subpoena. Thus, we have jurisdiction over both orders.

¶ 20    We turn to the merits. Megan contends that the trial court erred in denying her motion to quash the subpoena. Section 2-1101 of the Code (735 ILCS 5/2-1101 (West 2022)) provides that, upon motion and "[f]or good cause shown," the trial court "may quash or modify any subpoena." Megan argues "good cause" based on her claim that (1) her bank records sought by the subpoena are not relevant and (2) requiring her to produce the bank records violates her constitutional right to privacy.

¶ 21    Illinois Supreme Court rules allow for broad discovery "regarding any matter relevant to the subject matter involved in the pending action." Ill. S. Ct. R. 201(b)(1) (eff. Mar. 17, 2023). "Relevant evidence means evidence having *any* tendency to make the existence of a fact in issue more or less probable." (Emphasis in original.) *Shamrock Chicago Corp. v. Wroblewski*, 2019 IL App (1st) 182354, ¶ 35.

> "[T]he right to discovery is limited to disclosure of matters that will be relevant to the case at hand in order to protect against abuses and unfairness, and a court should deny a discovery request where there is insufficient evidence that the requested discovery is relevant or will lead to such evidence." *Leeson v. State Farm Mutual Automobile Insurance Co.*, 190 Ill. App. 3d 359, 366 (1989).

¶ 22　　Here, the trial court found that Megan's bank records were relevant to Jessica's motion to modify Miguel's child support obligation and thus denied Megan's motion to quash. We review the court's determination for an abuse of discretion. See *Parkway Bank and Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 62 ("We review a circuit court's decision to quash a subpoena for abuse of discretion."); *Youle v. Ryan*, 349 Ill. App. 3d 377, 380 (2004) ("Discovery rulings are generally within the trial court's discretion and we will not disturb such decisions absent an abuse of that discretion."). "An abuse of discretion exists where the trial court's decision is arbitrary, fanciful, or unreasonable, such that no reasonable person would take the view adopted by the trial court." *Doe 1 v. Board of Education of the City of Chicago*, 2017 IL App (1st) 150109, ¶ 15.

¶ 23　　Under section 510(a)(1) of the Act (750 ILCS 5/510(a)(1) (West 2022)), "[a]n order for child support may be modified *** upon a showing of a substantial change in circumstances." Once the trial court determines that modification is warranted, the court calculates the new child support obligation under section 505(a) of the Act. *Id.* § 505(a); see *People ex rel. Hines v. Hines*, 236 Ill. App. 3d 739, 745 (1992). To calculate a party's "basic child support obligation," the court must determine "each parent's monthly net income." *Id.* § 505(a)(1.5)(A). Using the parents' "combined monthly net income" and the "schedule of basic child support obligations," the court shall then determine "each parent's percentage share of the basic child support obligation." *Id.* § 505(a)(1.5)(B), (C), (D). The Act creates "a rebuttable presumption" that the amount of child support calculated under the guidelines "is the correct amount of child support." *Id.* § 505(a)(3.3). However, a court may deviate from the guidelines to avoid "inequitable, unjust, or inappropriate" results. *Id.* § 505(a)(3.4). A court may consider, among other things, "any other factor" that would render application of the guidelines "inappropriate" when considering the "best interest[s]" of the

children. *Id.* § 505(a)(3.4)(C). Such other factors include "the financial resources and needs of the parents." *Id.* § 505(a)(2)(B).

¶ 24   In support of her argument that her bank records cannot be considered in determining Miguel's child support obligation, Megan cites the following excerpt from *Rushing*:

> "Traditionally, Illinois courts have held that '[t]he financial status of a current spouse may not be considered to ascertain the ability of a party to fulfill a child support obligation.' *In re Marriage of Keown*, 225 Ill. App. 3d 808, 813 (1992). This traditional rule is consistent with the specific statutory language of the child support guidelines and with the legislature's mandate that '[n]either husband or wife shall be liable for the debts or liabilities of the other incurred before marriage, and *** they shall not be liable for the separate debts of each other, nor shall the wages, earnings or property of either, nor the rent or income of such property, be liable for the separate debts of the other.' " *Rushing*, 2018 IL App (5th) 170146, ¶ 35 (quoting 750 ILCS 65/5 (West 2014)).

However, *Rushing* went on to state that "the separate income of a spouse can be relevant to the extent that the spouse's income frees up the parent's income so that the parent can pay more of his or her *own* income for the support of the child." (Emphasis in original.) *Id.* ¶ 38. As the *Rushing* court noted (*id.*), section 505(a)(2)(B) of the Act (750 ILCS 5/505(a)(2)(B) (West 2022)) provides:

> "The court shall determine child support in each case by applying the child support guidelines unless the court makes a finding that application of the guidelines would be inappropriate, after considering the best interests of the child and evidence which shows relevant factors including, but not limited to, one or more of the following:
>
> *** the financial resources and needs of the parents."

Thus, the Act specifically directs the trial court to consider a party's broader "resources and needs"—not just their own income or salaries—in determining child support under the statutory guidelines. "The legislature's use of the term 'resources' in section 505(a)(2)(b) indicate[s] that the legislature intended to allow the court to consider all the money or property to which the supporting parent had access, including a spouse's income, in determining whether to deviate from the minimum guidelines." *Rushing*, 2018 IL App (5th) 170146, ¶ 38.

¶ 25    In *Rushing*, the trial court held an evidentiary hearing on the child support recipient's motion to modify child support. *Id.* ¶¶ 6, 9. In ruling on the motion to modify, the court considered the income of the payor's current spouse. *Id.* ¶ 29. The payor and his current spouse "had a joint checking and joint savings account" (*id.* ¶ 40), and the current spouse "had a significant income that paid for much of the household expenses" (*id.* ¶ 42). The reviewing court held that the trial court did not err in considering the current spouse's income in calculating child support. *Id.* ¶¶ 42-44, 51.

¶ 26    Here, the trial court found that, given Miguel's and Megan's relationship, Megan's bank records were relevant to "whether or not [a] deviation [from the minimum guideline support] would be warranted." We agree. Under section 505(a)(2)(B) as construed in *Rushing*, Megan's bank records bear upon Miguel's "financial resources and needs" (750 ILCS 5/505(a)(2)(B) (West 2022)) and, thus, are pertinent to the overall determination of Miguel's support obligation. We recognize that this case is procedurally different from *Rushing*. No evidentiary hearing has been held on Jessica's motion to modify, and the extent to which he and Megan depend on each other's finances has not been developed in detail. However, the question at hand is simply whether Megan's bank records are *discoverable*, for potential use at a future evidentiary hearing. Megan admitted at the hearing on the motion to quash that she and Miguel share expenses. Megan's

contribution to those expenses "frees up [Miguel's] income so that [he] can pay more of his *** *own* income for the support of the child." (Emphasis in original.) *Rushing*, 2018 IL App (5th) 170146, ¶ 38. In this respect, Miguel had "access" to Megan's resources. See *id.* Thus, we cannot say that the court's finding that the bank records were discoverable was "arbitrary, fanciful, or unreasonable." See *Doe 1*, 2017 IL App (1st) 150109, ¶ 15. (We note that whether the bank records are relevant specifically to the application of the multi-family adjustment—as argued by the parties—is of no consequence, as the information is clearly relevant for the reasons already stated.)

¶ 27    Megan also contends that "[a]llowing Jessica access to Megan's personal bank records is an invasion of Megan's privacy." See *People v. Nesbitt*, 405 Ill. App. 3d 823, 828-29 (2010) ("[T]he privacy clause of the Illinois Constitution protects an individual's bank records."). Megan acknowledges, however, that an intrusion into a person's privacy is reasonable if "(1) the document sought [is] relevant to the inquiry and (2) a specification of the document to be produced [is] adequate but not excessive for the purpose of the relevant inquiry." *People v. Jackson*, 116 Ill. App. 3d 430, 436 (1983). Here, as already determined, Megan's bank records are relevant to a determination of Miguel's child support obligation. We reject Megan's argument that the information sought is excessive in that it covers "a period of nearly four years." In the proceedings below, the parties discussed the possibility of using a "three-year income averaging approach" to calculating child support; Jessica noted specifically that Miguel's yearly income had fluctuated. Because the trial court had the discretion to take the average of Miguel's yearly income for calculating child support (see *In re Marriage of Salbi*, 2023 IL App (2d) 230210-U, ¶ 69), Megan's income for the same span of years would be relevant as providing a more complete picture of the financial resources to which Miguel regularly had access.

¶ 28    Based on the foregoing, the trial court did not abuse its discretion in denying Megan's motion to quash and ordering her to comply with Jessica's subpoena. Having so concluded, we find further that the court did not abuse its discretion in holding Megan in indirect civil contempt of court. However, even though we find that the February 7, 2025, discovery order must be upheld, we may vacate the contempt finding if Megan's refusal to produce the documents " 'was not contemptuous of the circuit court's authority but rather was made in good faith based on sound legal arguments for purposes of effectuating an interlocutory appeal.' " *Brown v. Advocate Health & Hospitals Corp.*, 2017 IL App (1st) 161918, ¶ 28 (quoting *Klaine v. Southern Illinois Hospital Services*, 2014 IL App (5th) 130356, ¶ 9). We find this to be such a case. Accordingly, we vacate the trial court's March 5, 2025, order finding Megan in indirect civil contempt of court.

¶ 29                                    III. CONCLUSION

¶ 30    For the reasons stated, we affirm the trial court's order of February 7, 2025, denying Megan's motion to quash Jessica's subpoena and ordering Megan to comply. However, we vacate the court's March 5, 2025, order finding Megan in indirect civil contempt of court and sentencing her to an indeterminate period in the McHenry County Jail, not to exceed six months.

¶ 31    Discovery order affirmed.

¶ 32    Contempt order vacated.